UNITED STATES of America, Appellee,
(Docket Nos. 83–1204, 83–1205)

v.

Charles O. DUKES, Appellant.

and

Charles O. DUKES, Appellant,
(Docket No. 83–2185)

v.

UNITED STATES of America, Appellee.

Nos. 199–201, Docket 83–1204,
83–1205, 83–2185.

United States Court of Appeals,
Second Circuit.

Argued Sept. 22, 1983.
Decided Jan. 25, 1984.

Thomas D. Clifford, Hartford, Conn. (Skelley, Clifford, Vinkels, Williams & Rottner, P.C., Hartford, Conn., of counsel), for appellant.

Richard N. Palmer, Asst. U.S. Atty., Dist. of Conn., Hartford, Conn., (Alan H. Nevas, U.S. Atty., Dist. of Conn., New Haven, Conn., of counsel), for appellee.

Before LUMBARD, OAKES and VAN GRAAFEILAND, Circuit Judges.

LUMBARD, Circuit Judge:

Charles O. Dukes appeals from a judgment of conviction for bank robbery, 18 U.S.C. § 2113(a) (1982), and conspiracy to commit bank robbery, 18 U.S.C. § 371 (1982) entered in the District of Connecticut on August 12, 1982, following a jury verdict on March 10, 1982. He also appeals from an order of Judge Cabranes, filed May 27, 1983, denying his motion for a new trial and his petition under 28 U.S.C. § 2255 to vacate his conviction.

In each of his appeals Dukes presents claims of prosecutorial misconduct and ineffective assistance of counsel. Since none of these claims involves newly discovered evidence, Dukes' motion for a new trial was not timely filed, and the district court lacked jurisdiction to consider it. Accordingly, we dismiss the appeal from the denial of the motion for a new trial. Dukes could not raise his prosecutorial misconduct claims on direct appeal, because they were not raised at trial, nor his ineffective assistance of counsel claim, since it involves factual matters concerning trial strategy outside the trial record. We therefore affirm Dukes' conviction on direct appeal. Although Dukes properly raises both claims in his § 2255 petition to vacate his conviction, we agree with Judge Cabranes' findings that Dukes was not denied effective assistance of counsel, and was not prejudiced by any conduct of the prosecutor during trial. Accordingly, we affirm the denial of Dukes' petition.

I.

On June 9, 1981, three men robbed the Colonial Bank and Trust Company at 270 Farmington Avenue in Farmington, Connecticut, at gunpoint. After obtaining $1,057 in cash from the teller drawers, the

men ran from the bank to their get-away car, driven by a fourth man. Dukes, according to the government, was that fourth man.

The principal witnesses for the government were two cooperating codefendants, Jose Mora, a Hispanic male, and David Oszurek, a white male. They testified that Dukes, a black male, planned the robbery, helped "case" the bank on several occasions, and drove the car used during the bank robbery. Hazel Shafer, a friend of Dukes for two years, testified that Dukes came to her house in Farmington late in the morning on June 9, accompanied by Mora and Oszurek, whom she did not know at the time but later identified from FBI photographs. The men arrived in a rust-colored full-sized car, a fact Shafer remembered because she knew Dukes usually drove a white Cadillac.[1] According to Shafer, the three men, after spending some time in her basement, left the house for a short time. After they returned, Shafer left them in the house and drove to the bank to withdraw money so that she could run other errands, but found it closed due to a robbery.[2]

David Jones, the bank manager, testified to the robbery, as did several other bank employees and a bank customer. Their testimony, as well as photographs taken by security cameras, established that the robbers included Mora, Oszurek, and a black male who remains unidentified. Joseph Guiliano, a local merchant, and John Hickey and Ron Cote, who were waiting outside the bank for a friend, saw the men leave the bank and run to a waiting car, which matched the description Shafer and Oszurek gave of a rust-colored full-sized car.

Mora testified that when the four men finally returned to Hartford, they noticed that one of the guns used in the robbery was missing. Oszurek testifed that the following day, Dukes phoned him and accused him of stealing the gun. Shafer stated that on the afternoon of the robbery, Dukes called her to see if he had left anything in her basement. Although she found nothing there at the time, she found a gun a week later.

Dukes' entire defense consisted of one witness, Mora's sister, who briefly testified to Mora's use of drugs and his corruptible personality.

On March 10, 1982, the jury found Dukes guilty. On April 2, 1982, pursuant to Dukes' application, new counsel was appointed. On July 6, 1982, still prior to his sentencing, he filed a motion for a new trial, pursuant to Fed.R.Crim.P. 33, raising claims of prosecutorial misconduct, newly discovered evidence,[3] and ineffective assistance of counsel. Because of uncertainty as to whether his motion for a new trial was timely filed, Dukes simultaneously filed a petition under 28 U.S.C. § 2255 that raised identical claims.

On August 11, 1982, before Dukes' motions were considered, Judge Cabranes sentenced Dukes to 15 years on the bank robbery count and five years on the conspiracy count, the sentences to run concurrently.

The government had opposed as untimely filed the portions of the motion for a new trial which are the subject of this appeal, but later agreed to consolidate the hearings on the new trial motion and § 2255 petition, which had both been amended to be identical. Five days of hearings were held in late January, 1983. On May 27, 1983, Judge Cabranes issued a detailed decision denying

---

1. Oszurek testified that the car was reddish maroon. Mora's statement to the police contained a crossed-out statement that the car was dark red. At trial, he testified that he thought the car was blue, but was sure only that it was a dark color.

2. The government's brief alleges that Shafer drove to see if the roads were clear enough for Dukes and the other men to leave her house.

3. Dukes claimed that the prosecutor withheld exculpatory evidence in that he failed to dis-

close facts obtained in an interview with Oszurek, suppressed information concerning Oszurek's alleged perjury, and suppressed certain psychiatric reports concerning Mora and Oszurek. In addition, Dukes claimed he had credible witnesses who could testify that Mora perjured himself at Dukes' trial. Judge Cabranes found no merit in any of these claims. Dukes does not appeal from the rulings on these matters.

the motion and the petition. Dukes then filed timely appeals from that decision and from his conviction.

## II.

■ Fed.R.Crim.Pro. 33 allows a district court, upon motion by a defendant, to grant a new trial "if required in the interest of justice." The rule contains explicit time limits: a motion based on "newly discovered evidence" must be made within two years of final judgment, while a motion on any other grounds must be made "within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7 day period." These time limits are jurisdictional. If a motion is not timely filed, the district court lacks power to consider it. *United States v. Vanterpool,* 377 F.2d 32 (2d Cir.1967); 3 Wright, Federal Practice and Procedure, § 558 at 360 (2d ed. 1982).

■ Dukes contends that his motion for a new trial was timely filed because it was based on newly discovered evidence. We disagree. For evidence to be considered newly discovered for purposes of Rule 33, a defendant must show that the evidence was discovered after trial and that it could not have been discovered sooner with the exercise of due diligence. *United States v. Alessi,* 638 F.2d 466, 479 (2d Cir.1980); *United States v. Natelli,* 553 F.2d 5, 7 (2d Cir.), *cert. denied,* 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977). We conclude that neither of the issues Dukes now raises—prosecutorial misconduct or ineffective assistance of counsel—involves newly discovered evidence.

On the charge of prosecutorial misconduct, Dukes claims he was deprived of a fair trial when, during redirect examination of Mora, the prosecutor elicited inadmissible evidence of a prior similar crime involving Dukes. In addition, Dukes claims that the prosecutor implicitly asserted his own belief in the truthfulness of Mora's testimony by asking Mora a series of questions intended to show the absence of any motivation to lie.

In cross-examining Mora, Dukes' assigned counsel, C. Thomas Furniss, attempted to show that Mora had been pressured by Leo Chupron, a Hartford police officer, into saying that Dukes was the instigator of the Farmington robbery. Following his arrest, Mora signed a statement that on the morning of the robbery he went to Dukes' Hartford restaurant on foot. At trial, he testified differently. Furniss pressed Mora on the reason for the inconsistency:

Q: Okay. You didn't go to Charlie's restaurant on foot, the way you said in your statement?

A: No.

Q: Well why did you give that statement under oath?

A: Because I was thinking about something else.

Q: Leo Chupron, right?

A: No.

Q: What?

(off the record discussion between the witness and Attorney Maxwell [Mora's counsel]).

A: I was thinking about another job that was done.

On redirect examination by Assistant U.S. Attorney Dabrowski, Mora testified that he had given the statement while under the influence of heroin, and that he had not talked to anyone other than his lawyer from the time of his arrest until he spoke with Dabrowski, accompanied by his lawyer, the weekend before he testified at trial. Mora stated that his lawyer had told him not to talk to Chupron, and that he understood that if he perjured himself at trial, the plea bargain arrangement whereby he received a reduced sentence in return for his testimony would be revoked and he would be resentenced. Dabrowski then questioned Mora about the "other job that was done," which, of course, was not a subject of the prosecution:

Q: Mr. Mora, you testified that East Hartford bank job in which you were involved, Dave Oszurek was also involved in this?

A: Yes.

Q: Did anybody else go in the bank, besides you and Dave?

A: Yes.

Q: Who else?

A: Another black male.

Q: Do you know who he is?

A: I don't know his name.

Q: Who set that bank job up?

A: Charlie.

The court sustained Furniss' immediate objection, and, as requested by Furniss, ordered the answer stricken and instructed the jury to disregard it.

Dukes' claims concerning Dabrowski's conduct do not involve newly discovered evidence. Both involve questioning during trial, and no more. At the post-trial hearing, Dukes' own expert testified as to the prosecutorial misconduct claim based solely on his reading of the record. The only shred of evidence outside the record that Dukes points to was Dabrowski's statement to Furniss prior to trial that, at that time, he did not intend to introduce evidence of other crimes committed by Dukes. Even if we were to assume, which we do not, that this was a representation that under no circumstances would such evidence be used, this was made to defense counsel before trial and thus is in no way newly discovered.

On the charge of ineffective assistance of counsel, Dukes points to four alleged errors by his court-appointed attorney: (1) defense counsel's questioning of Mora as to what he was thinking about when he made his statement to the police (to which Mora responded that he was thinking about an earlier robbery); (2) defense counsel's failure to object at the first question the prosecutor asked Mora on redirect examination concerning the earlier robbery; (3) defense counsel's failure to move for a mistrial upon Mora's testimony of Dukes' involvement in the earlier robbery; and (4) defense counsel's failure to cross-examine Cote, the only witness other than Mora and Oszurek who had any recollection of actually seeing the driver of the get-away car.

All of these alleged errors go to the tactical decisions made by Dukes' lawyer as to how to handle the evidence already in his possession at trial. None cites to newly discovered evidence going to Dukes' innocence or guilt. However, appellant urges us to accept the view of the D.C. Circuit, which has stated that "[w]here evidence of the ineffectiveness of trial counsel is brought to the attention of the court for the first time in support of the motion, that evidence is 'newly discovered' for purposes of Rule 33." *United States v. Brown,* 476 F.2d 933, 935 n. 11 (D.C.Cir.1973); *United States v. Thompson,* 475 F.2d 931, 932 (D.C. Cir.1973). Appellant asserts several policy reasons for treating ineffective assistance of counsel claims as newly discovered evidence and thus exempting them from Rule 33's seven-day limitation: that it would afford an orderly process for hearing such claims, allow presentation when the evidence is fresh before the trial judge, who is best acquainted with trial counsel's performance, and facilitate an immediate resolution of the claim.

All of those justifications seem to us to cut the other way. Treating claims of ineffective assistance of counsel as newly discovered evidence would allow claims to be raised up to two years after final judgment, which may well be more than two years after trial, when even the trial judge may remember little of counsel's performance. It is true that most defendants cannot and do not realize the inadequacies of trial counsel's performance until well after trial. But we agree with the Seventh Circuit's decision in *United States v. Ellison,* 557 F.2d 128, 133 (7th Cir.), *cert. denied,* 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 450 (1977), that "[t]he practical difficulties faced by defendants seeking to raise ineffective-assistance-of-counsel claims by way of motion for a new trial ... do not give us cause to corrupt the clear language of Rule 33." *Accord United States v. Lara-Hernandez,* 588 F.2d 272, 275 (9th Cir.1978). That decision does not leave defendants remediless, since most claims of ineffective assistance of counsel may be brought under § 2255.

Since none of the claims raised on the Rule 33 motion involves newly discovered evidence, we dismiss the appeal from the denial of that motion.

## III.

■ Dukes also raises his claims of prosecutorial misconduct and ineffective assistance of counsel on direct appeal from his conviction. While Fed.R.App.P. 4(b) requires that an appeal be filed within 10 days after the entry of judgment, that period is stayed by the filing of a Rule 33 motion for a new trial. *See Collier v. United States,* 384 U.S. 59, 86 S.Ct. 1253, 16 L.Ed.2d 353 (1966). Thus, his appeal from conviction is timely.

■ On defendant's Sixth Amendment claim of ineffective assistance of counsel, the trial record is devoid of trial counsel's reasons, if any, for his tactical decisions. Absent such evidence, we have no basis for setting aside defendant's conviction on that ground. Since this is often the case, the usual method of challenging trial counsel's performance is through a collateral attack on the conviction. *United States v. Aulet,* 618 F.2d 182 (2d Cir.1980).

Dukes' allegations of prosecutorial misconduct present a more substantial ground for reversal. However, defendant's counsel failed to object to that misconduct at the time of trial in manner sufficient to preserve the issue for appeal. Defense counsel did object to one of the prosecutor's questions to Mora on redirect examination. That objection was sustained, and the answer was stricken from the record and the jury instructed to disregard it. But counsel never attempted to have the entire colloquy between Dabrowski and Mora concerning the earlier bank robbery stricken, never raised the issue of Dabrowski's improper

vouching for Mora's testimony, and never moved for a mistrial.

■ Absent such a motion, the allegedly prejudicial conduct may be reviewed only for plain error. *United States v. Stirling,* 571 F.2d 708, 734 (2d Cir.1978); *United States v. Canniff,* 521 F.2d 565, 572 (2d Cir.1975, *cert. denied sub nom. Benigno v. United States,* 423 U.S. 1059, 96 S.Ct. 796, 46 L.Ed.2d 650 (1976). To meet that standard of review, Dukes contends that the prosecutor's conduct concerning the testimony of earlier crimes was "not only prejudicial, but, more likely than not, its impact on the jury was beyond the control of any curative instruction," and that the error was so plain that, upon Mora's implicating Dukes in an earlier robbery, Judge Cabranes had a duty to declare a mistrial on his own motion.

■ We disagree with that characterization of the prosecutor's actions. Although of course it would have been better had the prosecutor abstained from further questioning about the East Hartford robbery, Mora's testimony of Dukes' participation in that robbery, considering the other evidence produced, could not have played a significant part in the jury's decision to convict.

Thus, we do not see any plain error in this record, and therefore we affirm Dukes' conviction.

## IV.

■ Finally, Dukes raises his claims of prosecutorial misconduct and ineffective assistance of counsel below in a petition to vacate a conviction under 28 U.S.C. § 2255, which was identical in content to his Rule 33 motion. A § 2255 petition is a substitute for habeas corpus,[4] 3 Wright, Federal

---

4. Dukes filed a petition for habeas corpus pursuant to both 28 U.S.C. § 2241, which governs writs of habeas corpus, and 28 U.S.C. § 2255, which provides for collateral attack of convictions of federal prisoners. A petition under § 2255 must be filed in the sentencing court, and provides "a remedy exactly commensurate with that which had previously been available by habeas corpus in the court of the district

where the prisoner was confined." *Hill v. United States,* 368 U.S. 424, 427, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962). Thus, § 2255 provides the exclusive remedy for a federal prisoner. We therefore treat Dukes' petition as a request under § 2255. 3 Wright, Federal Practice and Procedure, § 591 at 423 (1982). ("Of course, labels are not decisive, and a petition for habeas corpus filed in the sentencing court can and

Practice and Procedure, § 593 at 434 (2d ed. 1982), and, like habeas corpus, will generally be successful only on a showing of constitutional error.[5] The district court denied the petition for the same reasons it gave in denying the new trial motion, see discussion *supra.* Defendant appeals from that denial.

Unlike a motion for a new trial under Rule 33, a collateral attack under § 2255 may be made "at any time," and thus was not time-barred when raised below. However, collateral attack is not a substitute for direct appeal and petitioners are therefore generally required to exhaust direct appeal before bringing a petition under § 2255. *See, e.g., Martin-Trigona v. Shiff,* 702 F.2d 380, 388 (2d Cir.1983).

Since Dukes is now appealing from his conviction for the first time, obviously he had not exhausted his direct appeal prior to bringing the § 2255 petition in the court below. However, we believe that a remand to allow Dukes to reinstate his § 2255 petition now that his appeal has been denied would be a complete waste of judicial resources. Judge Cabranes has already conducted five days of post-trial hearings which extensively covered the issues Dukes raises. Thus, despite the fact that at the time he instituted his collateral attack he had not yet appealed from his conviction, we treat his collateral attack as properly filed, and review the district court's findings in denying that petition.

The scope of our review of the district court's denial of Dukes' petition under § 2255 is limited; the district court's findings will not be overturned unless clearly erroneous. *Zovluck v. United States,* 448 F.2d 339, 341 (2d Cir.1971), *cert. denied,* 405 U.S. 1043, 92 S.Ct. 1327, 31 L.Ed.2d 585 (1972). The district court found that de-

fense counsel performed "competently and effectively," and that Dukes was not prejudiced by any of the questions the prosecutor asked of Mora. We agree.

## A. *Ineffective Assistance of Counsel*

At the time of the district court's ruling, the standard for judging competence of counsel in this circuit was the "farce and mockery" standard established over thirty years ago in *United States v. Wight,* 176 F.2d 376 (2d Cir.1949), *cert. denied,* 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950): "[a] lack of effective assistance of counsel must be of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice." 176 F.2d at 379. Recently, however, we abandoned the "farce and mockery" standard, to adopt a "reasonably competent assistance standard." Thus, "effective" assistance now means that "the quality of a defense counsel's representation should be within the range of competence reasonably expected of attorneys in criminal cases." *United States v. Trapnell,* 725 F.2d 149, 153 (2d Cir.1983). This shift in standards presents no problems here. In this case, as should be true in almost every case involving a claim of ineffective assistance of counsel serious enough to require an evidentiary hearing, the principal witness at the post-trial hearing was Furniss, the attorney whose performance was at issue.[6] The district court carefully considered counsel's testimony, and explicitly found that "under either of the possibly applicable standards, Dukes was properly represented by well-prepared and diligent trial counsel." We affirm that ruling.

Dukes attacks Furniss' questioning of Mora on cross-examination. Yet, as the

---

should be treated as if it were a motion under § 2255.").

**5.** Rule 33 allows a district court upon motion by a defendant, to grant a new trial "if required in the interest of justice." A motion for a new trial based on newly discovered evidence, however, will only be granted when admission of the newly discovered evidence "would probably lead to an acquittal." *United States v.*

*Alessi,* 638 F.2d 466, 479 (2d Cir.1980) (citations omitted).

**6.** In the event that counsel accused of being incompetent is not called to testify or present evidence, the district court, before making any determination that counsel was incompetent, should provide counsel with that opportunity.

district court found, when Mora answered Furniss' question by saying that he was thinking about an earlier robbery, the answer "arguably was helpful to Dukes in that it tended to show Mora as a bad person who had been involved in numerous crimes; it did not implicate Dukes;" and it could be seen as lending support to the theory that Mora and Oszurek were testifying for the government solely to earn lighter sentences, which they in fact received. Even Wilson Paul Flynn, who testified as Dukes' legal expert at the post-trial hearing, stated only that, while he did not favor the asking of "why" and "what" questions, it "is a question of technique."

Dukes is no more persuasive in his claim that defense counsel should have objected as soon as the prosecutor, on redirect examination, brought out the earlier robbery. Defense counsel, quite understandably, was content to let Mora testify as to his and Oszurek's involvement in other bank robberies. As soon as Mora implicated Dukes in another robbery, Furniss objected. His objection was sustained, Mora's answer stricken, and the jury instructed to disregard it. Dukes now claims it was error not to move for a mistrial at that point. But Judge Cabranes found that Furniss, after consulting with Dukes, decided not to do so because, on balance, Mora's testimony helped Dukes. We cannot conclude that the decision was unreasonable. Whether Mora named Dukes in the Farmington robbery alone or whether they worked together on another bank robbery, the central issued remained whether the jury believed Mora and Oszurek that Dukes organized the robbery and drove the get-away car.[7]

Dukes' final claim concerning trial counsel is that counsel erred in not cross-examining Cote, the government witness who testified to seeing a white man drive the get-away car. Before trial Furniss inter-

viewed Cote, accompanied by Dabrowski and Special Agent James Riordan of the FBI. While Cote initially indicated that he was "absolutely sure" that the driver of the get-away car was a white male resembling Oszurek, he concluded the interview on a much more tentative note, saying that his best recollection was that a white male drove the car. At trial, Cote repeated his uncertain identification of the driver. He reiterated that he was not absolutely sure of anything, and that it was merely his best recollection (in his words, "5 on a scale of 1 to 10") that a white male drove the get-away car.

Given Cote's testimony, it was quite reasonable for Furniss to conclude that any cross-examination might make Cote move closer to the government's position. After hearing testimony at trial and the post-trial hearings, the district court concluded that "Cote's use of the term 'absolutely sure' probably referred to the fact that he had actually observed the driver, not to the identification of the driver as Oszurek." Furniss also testified that, had he thought it necessary to impeach Cote's trial testimony with his interview statements, he would have withdrawn from representing Dukes and testified himself. He saw no need to do so, however, and our reading of the transcript reveals that decision to be well-founded.

Dukes' claims seems to us no more than second guessing selected trial strategies simply because those strategies failed. We have repeatedly held that this is an insufficient basis from which to find a Sixth Amendment violation. *United States v. Trapnell, supra,* at 154–55; *United States v. Helgesen,* 669 F.2d 69, 72 (2d Cir. 1982). Moreover, Judge Cabranes found that Furniss consulted with Dukes on every significant issue in the case. Therefore, we agree with the district court's holding that

---

7. Dukes also argues that Judge Cabranes had a duty to declare a mistrial on his own motion after the testimony about the earlier bank robbery. We disagree. Judge Cabranes did all he was asked to do. He immediately struck the testimony and instructed the jury to disregard it. As we noted earlier, the testimony was not clearly damaging to Dukes' case. We see no reason why he should have declared a mistrial on his own motion, perhaps thereby risking a claim of double jeopardy were Dukes to be convicted in a new trial that he never asked for. *See Arizona v. Washington,* 434 U.S. 497, 503–08, 98 S.Ct. 824, 829–32, 54 L.Ed.2d 717 (1978).

trial counsel's performance met the "reasonably competent assistance" standard now adhered to in this circuit.

B. *Prosecutorial Misconduct.*

None of the claims concerning the alleged misconduct of the prosecutor was raised at trial. That being so, on collateral attack Dukes was required to show "(1) 'cause' excusing his . . . procedural default; and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady,* 456 U.S. 152, 168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *United States v. Corsentino,* 685 F.2d 48 (2d Cir.1982). Although the Supreme Court has not elaborated on the precise contours of what constitutes excusable "cause," Dukes surely cannot make the requisite showing. Undoubtedly, neither claim of prosecutorial misconduct was raised at trial because defense counsel chose not to raise them, after consultation with the defendant.

We also agree with the district court's finding that there was no evidence of prejudice from the alleged prosecutorial misconduct. We see nothing in the testimony Dabrowski elicited from Mora on redirect examination that requires a new trial. Furniss attempted to damage Mora's credibility during cross-examination. Dabrowski merely sought to show that Mora's difficulty during cross-examination was the result of his confusion about earlier bank robberies, not the result of lying or outside pressure to lie. All of these issues had been raised on cross-examination. Dabrowski had every right to rehabilitate his witness, and did just that by eliciting testimony that Mora had been told by Dabrowski only to tell the truth, that Mora had no contact with Leo Chupron, the Hartford police detective, between his arrest and his testimony, and that he understood that a condition of his reduced sentence agreement was his truthful testimony. While a prosecutor may not vouch for the credibility of a witness based on facts known to him but not introduced at trial, *United States v. Span-*

*gelet,* 258 F.2d 338, 343 (2d Cir.1958); ABA Standards for Criminal Justice § 3–5.8(b) ("It is unprofessional for the prosecutor to express his personal belief or opinion as to truth or falsity of any testimony or evidence or the guilt of the defendant"), we see nothing improper in Dabrowski's eliciting testimony from a witness in order to convince the jury that the witness has no reason to lie, particularly when the witness' credibility has been put into issue by the defense. *See, e.g., United States v. Bright,* 630 F.2d 804, 825 (5th Cir.1980).

As we have said, it would have been better had the prosecutor abstained from further questioning about the prior bank robbery. But we reiterate that Mora's testimony cut both ways in terms of credibility, since virtually all his testimony about prior crimes concerned his own wrongdoing.

The defendant's own expert testified at the post-trial hearing that the introduction of evidence of the prior crime on redirect examination did not, under the circumstances, constitute misconduct. In addition, the district court found that the prosecutor acted in good faith. Although Dabrowski advised Furniss before trial that he did not intend to introduce evidence of other crimes committed by Dukes, that was not a representation that under no circumstances would such evidence be used. The district court properly considered Dukes' claim of prejudice in the context of the entire trial, including its own prompt cautionary instructions. *E.g., United States v. Hinton,* 543 F.2d 1002, 1015 (2d Cir.1976), *cert. denied sub nom. Carter v. United States,* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976), *cert. denied sub nom. Darby v. United States,* 429 U.S. 1051, 97 S.Ct. 764, 50 L.Ed.2d 767 (1977), *cert. denied sub nom. Cameron v. United States,* 430 U.S. 982, 97 S.Ct. 1677, 52 L.Ed.2d 376 (1977); *United States v. Bell,* 500 F.2d 1287, 1289–90 (2d Cir.1974).

Based largely on the testimony of two confederates and Dukes' friend Hazel Shafer, the government's case against Dukes was overwhelming. Considered in that light, we agree with the district court's

**44**

conclusion that "[i]t cannot be said, on this record, that the single answer implicating 'Charlie' substantially influenced the jury ... or that the evidence affected (much less changed) the outcome of the trial."

## CONCLUSION

As Dukes did not raise the issue of ineffective assistance of counsel or prosecutorial misconduct in a timely motion for a new trial, we dismiss Dukes' appeal from the district court's denial of the motion. Since none of the claims Dukes now raises involves plain error, Dukes' failure to raise them below precludes review in this court on direct appeal. Therefore, we also affirm his conviction. On collateral attack, we agree with the district court that Dukes was not denied effective assistance of trial counsel, nor was he prejudiced by any prosecutorial misconduct. Accordingly, the district court's denial of his petition to vacate his conviction under 28 U.S.C. § 2255 is affirmed.