UNITED STATES of America, Plaintiff,

v.

Horace Mann OREN, Defendant.

No. G 85–67 Cr.

United States District Court,
W.D. Michigan, S.D.

Nov. 26, 1985.

John Smietanka, U.S. Atty. by Donald Davis, Asst. U.S. Atty., Grand Rapids, Mich., for plaintiff.

Vlachos, Jerkins & Hurley by Joseph Jerkins, Kalamazoo, Mich., for defendant.

## OPINION AND ORDER

ENSLEN, District Judge.

Defendant, Horace Mann Oren, D.D.S., was indicted by a grand jury in May of 1985 on three counts of willfully attempting to evade and defeat the federal income tax for the tax years 1978–1980 in violation of 26 U.S.C. § 7201. Defendant stood mute at his arraignment and a plea of not guilty was entered on his behalf. A jury trial commenced in this court on September 17, 1985. On September 21, 1985, the jury returned a verdict of guilty on all three counts of the indictment.

The matter is currently before the court on Defendant's motion for new trial pursuant to Fed.R.Crim.P. 33 or, in the alternative, upon a writ of error *coram nobis*. Because the issue of Defendant's past and/or present competency to stand trial has been raised for the first time in these pleadings, I ordered an independent psychiatric evaluation of the defendant pursuant to 18 U.S.C. §§ 4241 and 4247(b), (c). The court-appointed psychiatrist, Dr. Walter M. Anglin, interviewed the defendant on November 14, 1985. His report and assessment has been made available to both parties. The court has also received and carefully considered the evaluation reports of three experts retained by the defendant. These experts are: Steven Berger, M.D. (Psychiatrist); Stanley C. Clayton, Ph.D. (Clinical Sociologist); and Daniel Rosen, Ed.D. (Clinical Psychologist).

The object of these evaluations is rather unique in terms of § 4241. Because all four evaluations were conducted after the criminal trial at issue, and due to the nature of defendant's motion, the medical inquiry was necessarily two-pronged: What is the current state of Dr. Oren's mental and emotional health and what was the state of his mental health up to and through the time of trial? In other words, the court is now called upon to make a *nunc pro tunc*, or retrospective, competency determination. While such determinations are of dubious validity after a significant time lapse, in this case the issue was first raised and all four evaluations were made within two months after the commencement of defendant's trial. *Cf. United States v. Ives*, 574 F.2d 1002 (9th Cir. 1978) (six-year time lapse too long for retrospective competency determination). Under the circumstances, I feel that this court *is* able to make a reliable judgment as to the defendant's mental competence to stand trial dating back to September 17 of this year.

For our purposes, the term "competence" is defined by reference to 18 U.S.C. § 4247(c)(4)(A). That section provides that:

[I]f the examination is ordered under section 4241, [the proper inquiry is] whether the person is suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

All four experts agree that Dr. Oren suffers, to some degree, from an obsessive-compulsive personality disorder. Significantly, however, none of the examining experts conclude the Dr. Oren is or was "incompetent," at least as that term is defined above. Rather, Dr. Anglin, the fourth and final examiner, concluded at page 3 of his report that: "At the time of this evaluation, Dr. Oren is mentally competent to understand both the nature and conse-

quences of the proceedings against him. It is felt that he *was* competent (albeit unwise) at the time of the alleged offenses and selection of his initial legal counsel."

■ I am in complete agreement with Dr. Anglin's assessment of defendant's competency. I think that it is beyond question that Dr. Oren understood the nature and consequences of his criminal trial. In fact, all the evidence indicates that Dr. Oren considered himself a martyr of sorts, a willing target of prosecution to further his cause. Dr. Oren apparently sought to be the subject of a test case in order to alert society to the evils of our monetary system and ultimately force the issue of the validity of the ratification of the sixteenth amendment. The evidence further indicates that Dr. Oren sought out his trial attorney, Lowell Becraft, for the purpose of presenting this very defense, after he had consulted with at least one local criminal defense attorney. While I, as a former trial attorney, might not consider this a prudent course, I note that prudence is not the equivalent of competence. I conclude, after reviewing the four medical reports and based upon my first-hand observation of the defendant at trial, that Dr. Oren is and was fully "competent" as that term is defined in § 4247.

■ I now shift to the defendant's motion for new trial. This motion is based alternatively on Rule 33 of the Fed.R. Crim.P. and the ancient writ of error *coram nobis*. Congress has expressly approved two methods by which a criminal defendant can collaterally attack his judgment of conviction and sentence in the district court. Rule 33 allows the defendant to move for new trial on any ground within seven days after the verdict, or within two years of the entry of final judgment if the motion is based on newly discovered evidence. Pursuant to 28 U.S.C. § 2255, a convicted prisoner *in federal custody* can challenge his sentence on constitutional, statutory or jurisdictional grounds at any time after sentencing. Rule 33 and § 2255, however, did not provide an effective means of collateral attack in all cases. For instance, new evidence discovered in excess of two years after the entry of the judgment of conviction could not provide the basis of a challenge to the conviction and sentence under either provision. A similar inability to challenge a sentence on constitutional, statutory or jurisdictional grounds resulted where the convict was, for whatever reason, not in federal custody at the time of the motion. Therefore, the ancient writ of error *coram nobis*, once considered an anachronism in federal jurisprudence, *see Lucas v. United States*, 114 F.Supp. 581 (D.W.Va.1948), was revitalized by the Supreme Court in 1954 to fill the gaps left by Rule 33 and § 2255. *See United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954). Deriving its authority from 28 U.S.C. § 1651(a) (the all writs section), the *Morgan* Court held that the writ of error *coram nobis* was available to review a criminal conviction when § 2255 did not apply (i.e., when the convicted defendant was not in federal custody). The Second Circuit subsequently held the writ applicable to newly discovered evidence challenges after the jurisdictional time period of Rule 33. *United States v. Keogh*, 391 F.2d 138 (2d Cir.1968). Nevertheless, while the writ of error *coram nobis* is useful as a gap filler, it may not be used to supplant Rule 33 or § 2255 when relief under these two provisions is otherwise available. Therefore, I will proceed to consider defendant's motion for new trial based upon the claims of newly discovered evidence under Rule 33.

■ As I read defendant's motion, the claimed "newly discovered evidence" is that defendant was incompetent at the time of trial, that said incompetence effectively precluded him from retaining competent lead counsel for trial, and that Mr. Becraft rendered ineffective assistance of counsel in the sixth amendment sense. Because I have already ruled that Dr. Oren was legally competent to stand trial under 18 U.S.C. § 4241, the first two claims of newly discovered evidence are without merit. With respect to the claim of ineffective assistance as newly discovered evidence, I note

that the Circuits that have considered this question are split. Only the D.C. Circuit has held that a claim of ineffective assistance of counsel can constitute newly discovered evidence under Rule 33. *See United States v. Brown,* 476 F.2d 933 (D.C.Cir. 1973). Since *Brown,* all other Circuits that have addressed the issue have held that a claim of ineffective assistance cannot be considered "newly discovered" because the facts that give rise to the claim were necessarily known to the defendant at the time of trial. *See United States v. Dukes,* 727 F.2d 34, 39 (2d Cir.1984); *United States v. Lara-Hernandez,* 588 F.2d 272, 275 (9th Cir.1978); *United States v. Ellison,* 557 F.2d 128, 133–34 (7th Cir.), *cert. denied,* 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 450 (1977). While the Sixth Circuit has not yet had the opportunity to rule on this issue, I think that a logical reading of Rule 33 compels the result reached by the Second, Seventh and Ninth Circuits. A claim of ineffective assistance of counsel, brought by a *competent* defendant under Rule 33, must be made, if at all, "within 7 days after the verdict or finding of guilty or within such further time as the court may fix during the 7-day period." In the words of the Fourth Circuit, a claim "[b]elatedly pursued is not newly discovered." *United States v. Molovinsky,* 688 F.2d 243, 248 (4th Cir.1982), *cert. denied,* 459 U.S. 1221, 103 S.Ct. 1228, 75 L.Ed.2d 462 (1983).

▉ Of course, my ruling does not preclude the defendant from raising the issue of ineffective assistance of counsel directly on appeal. However, I will state for the record that were I to reach defendant's claim of ineffective assistance on the merits, either under Rule 33 or the writ of error *coram nobis,* I would have held that defendant was not denied his sixth amendment right to effective assistance of counsel as that right was recently defined in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As the *Strickland* Court stated, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be

relied on as having produced a just result." *Id.,* at ——-——, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93. *Strickland* established a two part test for claims of ineffective assistance. First, defendant must show that his counsel was "deficient" in the sixth amendment sense. The attorney's conduct must be measured against an objective standard of reasonableness under prevailing professional norms. *Id.,* at ——-——, 104 S.Ct. at 2064, 80 L.Ed.2d at 693–94. Second, defendant must show that his attorney's conduct so prejudiced his defense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.,* at ——, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

As far as Mr. Becraft's ability to conduct a federal felony trial is concerned, I note that he stated that he had had some experience in criminal tax defense cases; that Mr. Jerkins, defendant's current counsel, moved to admit Mr. Becraft to the local bar for the purposes of this case pursuant to W.D.Mich.R. 14, thereby implicitly vouching for his competence; that Mr. Jerkins' firm filed an appearance as co-counsel in this case; and that Mr. Nicholas Vlachos, a member of that firm, sat at the defense counsel's table throughout the entire trial. Under the circumstances, it seems somewhat disingenuous for Mr. Jerkins to assert, at this late date, that his client was denied effective assistance of counsel.

▉ Furthermore, the primary quarrel with the conduct of the defense appears to be over trial tactics. Courts are understandably reluctant to secondguess a trial attorney's strategy after the fact and with the benefit of hindsight. The proper inquiry must be whether the attorney exercised reasonable professional judgment, considered from his perspective at the time of trial. Since this is a difficult determination at best, and since there is no one "correct" defense to any particular criminal charge, the court must indulge a "strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." *Strickland,* at ——, 104 S.Ct. at 2066, 80 L.Ed.2d at 694. Under this analysis, I could not say that Mr. Becraft's trial strategy, or his assistance in general, was deficient in the sixth amendment sense.

I would also have to say that different counsel with a different strategy, specifically Mr. Jerkins and his "diminished capacity" theory, would not be reasonably likely to obtain a verdict of acquittal on retrial. In my opinion, the evidence against the defendant at trial was overwhelming. This conclusion is buttressed by the fact that the jury deliberated for less than one hour. Based upon my observations at trial, and upon the reports of the four experts that examined the defendant, I simply do not think that it is reasonably likely that a new jury could be persuaded that the defendant was unable to appreciate the "nature and quality of the wrongfulness of his acts," thereby negating the requirement of willfulness. In sum, if I had to decide the issue of ineffective assistance of counsel, I would hold that defendant was unable to establish either prong of the *Strickland* test.

In any event, defendant's motion for new trial is denied.

IT IS SO ORDERED.