UNITED STATES of America

v.

**Bernard J. SORRENTINO, Defendant.**

**No. 94–CR–188.**

United States District Court,
N.D. New York.

Dec. 18, 1995.

Emil M. Rossi (Emil M. Rossi, Michael J. Vavonese, of counsel), Syracuse, New York, for defendant.

Thomas J. Maroney, United States Attorney, Northern District of New York (Charles E. Roberts, Assistant U.S. Attorney, of counsel), Syracuse, New York, for U.S.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

On July 21, 1995, defendant was found guilty by a jury of one count of bankruptcy fraud in violation of 18 U.S.C. § 152. In the instant motion defendant seeks a judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure. Defendant's motion is premised on two grounds. First, defendant argues that the verdict was against the weight of the evidence presented at the trial. Secondly, defendant claims that one of the jurors gave materially false answers to defense counsel's questions during voir dire. The court heard oral argument on the instant motion on September 28, 1995, at Syracuse, New York.

### BACKGROUND

Defendant Bernard J. Sorrentino was found guilty by a jury of making false statements in his bankruptcy petition in violation of 18 U.S.C. § 152. The indictment charged defendant with making three false statements in the petition. Specifically, defendant failed to disclose the existence of safe deposit boxes, bank accounts and the names of several businesses he had owned. May 18, 1994 Indictment, Document ("Doc.") 1, at 2.

As a preliminary matter the court notes that the relief defendant seeks is a judgment of acquittal pursuant to Rule 29(c). Notice of Motion, Doc. 30. Defendant bases the motion on two distinct grounds: the verdict was "against the weight of the evidence presented at the trial" and the misconduct of a juror. Affidavit ("Affid.") of Michael J. Vavonese, attached to Notice of Motion, Doc. 30, at 1–2, and 3–6. However, the only basis upon which to seek a judgment of acquittal is that the evidence is insufficient to sustain the conviction. *United States v. Gjurashaj*, 706 F.2d 395, 399 (2d Cir.1983); 2 Charles A. Wright, Federal Practice and Procedure § 466 (1982). The terms "weight of the evidence" and "sufficiency of the evidence" denote distinct standards of review. *See Tibbs*

*v. Florida*, 457 U.S. 31, 37–38, 102 S.Ct. 2211, 2215–16, 72 L.Ed.2d 652 (1981) (distinguishing "sufficiency of the evidence" standard from "weight of the evidence"); compare *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir.1992) (weight of the evidence), with *United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir.1994) (sufficiency of the evidence). Thus, applying the appropriate standard of review, the court treats defendant's motion for acquittal as one based on the sufficiency of the evidence. As to defendant's claim about juror misconduct, the appropriate relief is for a new trial pursuant to Fed.R.Crim.P. 33. With these legal principles in mind, the court examines the bases for defendant's motions.

## DISCUSSION

### a.  Judgment of Acquittal

The government first asks the court to deny defendants post-trial motions as untimely. Rule 29(c) provides that a motion for Judgment of Acquittal must be brought "within 7 days after the jury is discharged or within such further time as the court may fix during the 7–day period." Fed.R.Crim.P. 29(c). Rule 45(b) allows the court to enlarge the amount of time within which to file a motion, but that rule expressly proscribes the extension of time under Rule 29 "except to the extent and under the conditions stated in them." Fed.R.Crim.P. 45(b).

Read together, these rules show that "any extension of time for the making of a Rule 29(c) motion must be granted, if at all, within seven days after the jury is discharged." *United States v. Piervinanzi*, 765 F.Supp. 156, 157 (S.D.N.Y.1991). In the case at bar, the jury was discharged on July 21, 1995. At that time, the court directed that any motion by defendant be filed within two weeks. Trial Minutes, Doc. 29. Prior to the expiration of the two week period, defendant requested a further extension to file post trial motions. With leave of court, defendant filed the instant motion for judgment of acquittal on August 11, 1995. The court therefore concludes that defendant's instant motions were timely filed. The court turns to the merits of defendant's motion for judgment of acquittal.

In claiming that there was insufficient evidence presented at trial, defendant argues that no reasonable person could have concluded that the government proved beyond a reasonable doubt that defendant intended to defraud his creditors. To convict defendant on this count of bankruptcy fraud, the government was required to prove and the jury was required to find beyond a reasonable doubt that: 1) on or about the date alleged in the indictment, the bankruptcy proceeding was in existence; 2) defendant made, or caused to be made, false statements in or in relation to that proceeding; 3) defendant knew that the statements were false; and 4) the statements were made with the intent to deceive and defraud his creditors. *United States v. Guiliano*, 644 F.2d 85, 87 (2d Cir. 1981); *United States v. Grant*, 971 F.2d 799, 802 (1st Cir.1992); 2 Hon. Edward J. Devitt et al., Federal Jury Practice and Instructions: Criminal § 24.07 (4th ed. 1990). In the case at bar defendant claims that he could not have formed the requisite intent because his creditors were well aware of the existence of the assets defendant is alleged to have lied about in the bankruptcy petition. Affid. of Michael J. Vavonese, attached to Notice of Motion, Doc. 30, at 2.

In support of this argument, defendant asserts that the evidence proved his bankruptcy attorney was told about the other businesses, bank accounts and the safe deposit box. The attorney, according to defendant, failed to correct the erroneous statements in the petition because they were, in that attorney's opinion, not relevant. *Id.* at 2–3. Also, in a letter from defendant to his bankruptcy attorney, dated May 23, 1990, defendant asked him to amend the bankruptcy petition to correct the erroneous statements. According to defendant, the bankruptcy attorney did not amend the petition, apparently because he did not have the time, and merely forwarded the letter to the Trustee in Bankruptcy. Affid. of Michael J. Vavonese, attached to Notice of Motion, Doc. 30, at 3. Lastly, defendant claims that he fully disclosed these assets at a meeting with his creditors. Defendant asks the court, therefore, to conclude that the evidence presented to the jury was insufficient as a mat-

ter of law because he could not have intended to defraud his creditors.

The government argues that the jury verdict was entirely consistent with the evidence that defendant intended to defraud his creditors when he made a series of false statements in his bankruptcy petition. First, the jury heard a tape recording containing defendant's admissions at the bankruptcy trial. These statements directly contradicted defendant's sworn statements in his bankruptcy petition. Government's ("Gov.") Memorandum ("Mem.") of Law in Opposition to Defendant's ("Def.") Motion for Acquittal, Doc. 31, at 1. The jury was allowed to review the bankruptcy petition itself and compare it to a transcript of defendant's admissions at the bankruptcy hearing.

In addition, defendant's bankruptcy attorney testified at this trial about defendant's attempt to hide certain assets by falsely claiming that he lost almost $60,000 gambling. The attorney also testified that he withdrew as defendant's counsel in the bankruptcy action because defendant had lied to the attorney about defendant's assets. Lastly, the government points out that the jury reviewed the bankruptcy attorney's letter to defendant telling him in part "that if he went to trial, and persisted in his lies, the bankruptcy court would deny his petition, the case would be referred to the United States Attorney for prosecution, and [defendant] would go to jail." *Id.* at 2.

The government argues further that the jury was free to compare the evidence and draw their own conclusions as to whether defendant had the requisite intent. In addition, during oral argument the government claimed that it was irrelevant whether defendant's creditors knew about the existence of all of defendant's assets because defendant was charged with making a false statement in the bankruptcy petition, not with making a false statement to his creditors.

Defendant bears a heavy burden in challenging his conviction on the ground of insufficiency of the evidence. *D'Amato,* 39 F.3d at 1256 (citation omitted). First, the evidence must be viewed in the light most favorable to the government and all permissible inferences drawn in its favor. *Id.* at 1256

(citing *United States v. Nersesian,* 824 F.2d 1294, 1302 (2d Cir.), *cert. denied,* 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987)). The conviction must stand if the evidence is sufficient to convince any rational trier of fact that the crime charged has been proven beyond a reasonable doubt. *Id.* (citing *United States v. Resto,* 824 F.2d 210, 212 (2d Cir.1987)). On the other hand, "the government must introduce sufficient evidence to allow the jury to reasonably infer that each essential element of the crime charged has been proven beyond a reasonable doubt." *D'Amato,* 39 F.3d at 1256 (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

Here, defendant has not met his burden in showing that the jury could not reasonably conclude from the evidence that he was guilty beyond a reasonable doubt of making a false statement in his bankruptcy petition with the intent to defraud his creditors. In the instant case, the jury was instructed that the term "intent to defraud" means "to act knowingly and with the intention or purpose to deceive or to cheat." Minutes of Jury Charge, Doc. 42, at 17; *see also United States v. Lerch,* 996 F.2d 158, 161 (7th Cir. 1993). Further, the jury was instructed that "[a]n intent to defraud is accompanied, ordinarily, by a desire or a purpose to bring about some gain or benefit to oneself or some other person or by a desire or a purpose to cause some loss to some other person." Minutes of Jury Charge, Doc. 42, at 17. The court also gave the following instruction with regard to proof of intent.

[I]ntent may not ordinarily be proved directly, because there is no way of examining the operations of the human mind. You may infer the defendant's intent from the surrounding circumstances. You may consider any statement made or act done or omitted by the defendant, and all other facts and circumstances in evidence which indicate his state of mind.

You may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted to be done. As I have said

to you, it is entirely up to you to decide what facts to find from the evidence. Minutes of Jury Charge, Doc. 42, at 18.

The court is persuaded that the evidence was sufficient to allow the jury to conclude, either directly or through inference, that defendant had the requisite intent to defraud his creditors when he made the false statements in his bankruptcy petition. While the creditors' knowledge of defendant's assets may be a *factor* relevant to a determination of defendant's fraudulent intent, it is not dispositive of the absence of fraudulent purpose. *See Grant,* 971 F.2d at 809 ("Although the replacement of removed property may be probative evidence of lack of fraudulent intent [under 18 U.S.C. § 152], it is not dispositive."); *United States v. Klupt,* 475 F.2d 1015, 1018–19 (2d Cir.1973) (return of property not dispositive of fraudulent intent under 18 U.S.C. § 152). In addition, even if the jury was presented with apparently conflicting evidence, the resolution of those conflicts is the province of the jury, not this court. The court concludes that the evidence is sufficient to convince any rational trier of fact that the crime charged has been proven beyond a reasonable doubt. Therefore, defendant's motion for a judgment of acquittal on the grounds that the evidence was insufficient is DENIED.

### b. New Trial

Rule 33 provides that a court may grant a new trial based on newly discovered evidence, but such a motion must be made within two years of final judgment. A motion on any other grounds must be made "within 7 days after verdict or finding of guilty, or within such further time as the court may fix during the 7 day period." Fed. R.Crim.P. 33.

Defendant claims that his motion for a new trial is based on newly discovered evidence. The court disagrees. "For evidence to be considered newly discovered for purposes of Rule 33, a defendant must show that the evidence was discovered after trial and that it could not have been discovered sooner with the exercise of due diligence." *United States v. Dukes,* 727 F.2d 34, 38 (2d Cir.1984) (citations omitted); *see also United States v.*

*Mayo,* 14 F.3d 128, 132 (2d Cir.1994) (citing *Dukes* 727 F.2d at 38). For the reasons discussed below, the court concludes that the issue raised by defendant—juror misconduct—does not involve newly discovered evidence. The court turns to defendant's argument for a new trial based on the alleged juror misconduct.

Defendant claims that juror Lynn Farella ("juror Farella") gave materially false answers to questions during voir dire regarding her relationship with defendant's former wife, Sandra Thomas. Affid. of Michael J. Vavonese, attached to Def.'s Notice of Motion, Doc. 30, at 4–5. Defendant argues that the "relationship between Ms. Thomas and [juror] Farella and her family ... is so close that [juror] Farella's statements were clearly untruthful and misleading and not a mere lapse of memory." Affid. of Michael J. Vavonese, attached to Def.'s Notice of Motion, Doc. 30, at 4–5.

In a letter to defense counsel, Ms. Thomas states that she has been "intimately associated" with juror Farella's parents and siblings since 1971. Exh. A, attached to Affid. of Sandra Thomas, Doc. 35. Ms. Thomas frequently visits the home of juror Farella's parents for "barbecues, holidays and weekend visits." When Ms. Thomas separated from defendant in 1983, she stayed with her close friend Sandra Farella, juror Farella's sister, for a couple of weeks. During that time juror Farella visited her sister's home and met Ms. Thomas. Ms. Thomas relayed to juror Farella and Sandy her "horrible experiences" with defendant. Juror Farella "agreed with her sister that [Ms. Thomas] should not go back to [her] husband." Exh. A, attached to Affid. of Sandra Thomas, Doc. 35.

In 1991, Ms. Thomas attended a graduation party for Sandra Farella's daughter. Juror Farella was present and "listened attentively" while Ms. Thomas "shared humorously about the $75,000 judgment against [her] former husband." Exh. A, attached to Affid. of Sandra Thomas, Doc. 35.

Ms. Thomas also claims that on numerous occasions she talked to various members of juror Farella's family about her marriage to

defendant. Ms. Thomas does not say, however, whether juror Farella was present during any of those conversations. *Id.*

Defendant complains that during voir dire juror Farella misled defense counsel into believing that she has not seen or spoken with Ms. Thomas since Ms. Farella was 18 years old. The following colloquies took place during voir dire between juror Farella and defense counsel Emil M. Rossi.

Mr. Rossi: Hi, Ms. Farella. How are you?

Ms. Farella: Good.

Mr. Rossi: Do you know a person up in Oswego named Sandra Thomas?

Ms. Farella: Yeah, I think. Does she hang out with two other girls named Sandy? I think that might be the same person.

Mr. Rossi: Mr. Sorrentino's former wife is a person named Sandra Thomas who lives in Oswego, and when he heard the name Farella—

Ms. Farella: Does he know if she hung out with two other Sandys? Because I know there is another Sandy Thomas, and that's how if someone asks you something, it's one of the Sandys.

Mr. Rossi: I'll get back to you. Do you do your own taxes?

Ms. Farella: Of course.

Mr. Rossi: Well, if you need services, I'll leave my card.

Ms. Farella: I hope that I never do.

. . . .

Mr. Rossi: Just one moment, if I may, your Honor. Ms. Farella, what I'm told is that one of the three Sandys is a Farella, Sandy Farella.

Ms. Farella: Might be that, but I haven't talked to my sister in 10 years, so it's been many more that I've laid eyes on Sandy Thomas. They were kids when I knew her.

Mr. Rossi: Am I correct that you have no contact with her at this time?

Ms. Farella: My sister or Sandy? I wouldn't know her if I saw her on the street right now. I haven't seen her since I was 18.

Mr. Rossi: Two full years?

Ms. Farella: Yeah, right.

Partial Minutes of Trial, Doc. 33, at 40–41, and 50–51.

The government argues that the instant motion should be dismissed on several grounds. First, the government objects that the defendant has not shown that the evidence of juror misconduct was discovered after the verdict was returned. Alternatively, if the juror misconduct was discovered after the trial, the government claims, defendant's failure to discover this information prior to completion of the trial constitutes a lack of due diligence. Lastly, the government argues that there is no evidence that juror Farella's answers were false, deliberate, or prejudiced defendant. Gov.'s Mem. of Law in Opposition to Def.'s Motion for Acquittal, attached to Affid. of Charles E. Roberts, Doc. 31, at 7. The court examines these arguments in turn.

In order to succeed on the instant motion, defendant first "must show that 1) the information contained in his motion is newly discovered; and 2) the failure to discover this information was not a result of the defense team's lack of due diligence." *United States v. Pelullo,* 895 F.Supp. 718, 733 (E.D.Pa. 1995) (citations omitted). *See also United States v. North,* 716 F.Supp. 652 (D.D.C. 1989) (defendant must move promptly whenever it receives information of prior misconduct).

Defendant avers that he first learned through a conversation with his son that defendant's former wife "knew [juror] Farella and her family very well, she had seen [juror] Farella in the recent past, and that [juror] Farella knew all about me and my relationship with my ex-wife, Sandra Thomas." Affid. of Bernard J. Sorrentino, Doc. 41, at 1. During oral argument, defense counsel stated that defendant learned this information later in the day after the jury rendered its verdict. He reported this information the following day to his defense attorney. Several days later, Ms. Thomas sent a letter to defendant's attorney detailing her familiarity with the Farella family.

Also during oral argument, defense counsel claimed that his examination of juror

Farella satisfied the due diligence requirement in that juror Farella was questioned on two occasions during voir dire about her relationship to Ms. Thomas. In essence, defense counsel argues that his decision to accept juror Farella's answers as true and to put his inquiry to rest, given the misleading answers, was reasonable. Defense counsel further stated during oral argument that if the defense had been made aware of the extent of juror Farella's familiarity with defendant and Ms. Thomas, then he would have attempted to remove her for cause.

While the evidence tends to show that defendant did not discover during voir dire the full scope of juror Farella's alleged relationship to defendant and Ms. Thomas, defendant has not shown that he exercised an appropriate degree of due diligence in investigating that relationship before the completion of the trial. First, defendant's attorney had notice prior to his questioning of juror Farella that she knew Ms. Thomas. The discussion between defense counsel and juror Farella shows that defendant had a sufficient degree of familiarity with the juror and her possible relationship with Ms. Thomas to prompt questions about that relationship.

The court also finds significant the reasonable likelihood that defense counsel could have investigated further the matter prior to the conclusion of the trial. Defense counsel evidently had the ability to contact Ms. Thomas and ask about her relationship with juror Farella. This is evidenced by the fact that defense counsel obtained the letter from Ms. Thomas soon after the conclusion of the trial. Therefore, the court concludes that defendant did not exercise due diligence in investigating juror Farella's relationship to defendant or his former wife, Ms. Thomas, and his motion for a new trial on these grounds is DENIED.

■ Although the court may end its inquiry here, the court also concludes that defendant's motion for a new trial fails for a second reason. To set aside the verdict on the ground of juror misconduct, defendant must also show that 1) the juror "failed to answer honestly a material question on voir dire," and 2) "a correct response would have provided a valid basis for a challenge for

cause." *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) (juror's good faith failure to correctly answer questions during voir dire did not constitute dishonesty). The Second Circuit has "read this multi-part test as governing not only inadvertent nondisclosures but also nondisclosures or misstatements that were deliberate." *United States v. Langford,* 990 F.2d 65, 68 (2d Cir.1993). In addition, it is not enough to show that a juror's answers were dishonest; defendant must also establish actual bias. *Langford,* 990 F.2d at 68. In *McDonough,* Justice Brennan explained that the

> proper focus when ruling on a motion for new trial in this situation should be on the bias of the juror and the resulting prejudice to the litigant.... Whether the juror answered a particular question on voir dire honestly or dishonestly, or whether an inaccurate answer was inadvertent or intentional, are simply factors to be considered in th[e] ... determination of actual bias.

*McDonough,* 464 U.S. at 557–58, 104 S.Ct. at 851 (Brennan, J., concurring in the judgment).

Defendant argues that juror Farella's answers were clearly dishonest. The court disagrees. Juror Farella's answers had the ring of truth from the outset of the questioning by defense counsel. For example, juror Farella immediately acknowledged some personal familiarity when she responded during voir dire, "Yeah, I think Does she hang out with two other girls named Sandy? I think that might be the same person." Partial Minutes of Trial, Doc. 33, at 40.

On the other hand, Ms. Thomas contradicts juror Farella's claim during voir dire that she had no contact with Sandra Thomas since juror Farella was 18 years. Ms. Thomas claims meeting juror Farella as recently as 1991. However, Ms. Thomas mentions only two occasions in which she and juror Farella actually met, and the first meeting occurred about 13 years ago. It is reasonable to conclude from the circumstances viewed as a whole that juror Farella did not recall the incidents during voir dire. The court is unable to conclude, with any degree of certainty, that juror Farella's answers to

26

Mr. Rossi were due to anything other than her failure to recall the events in question.

Viewing the circumstances as a whole, the court finds that defendant has not presented sufficient evidence to allow the court to conclude that juror Farella's answers during voir dire were dishonest or that she was biased against defendant. For the foregoing reasons, the court DENIES defendant's motion for a new trial.

### c. Post-trial Evidentiary Hearing

During oral argument, defendant asked the court to hold a post-trial evidentiary hearing with regard to the new trial motion. The court fully recognizes its decision to deny defendant's motion for a new trial is reached without the assistance of a such a hearing. However, the court has substantial discretion in deciding whether the allegations justify an evidentiary hearing. In this circuit courts should be "reluctant to haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences." *United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir.1989) (citations and internal quotations omitted). Indeed, to justify a post-trial hearing, defendant must come "forward with clear, strong, substantial and incontrovertible evidence ... that a specific, nonspeculative impropriety has occurred." *Id.* (citations and internal quotations omitted). Referring to the substantial policy reasons for the rule against the use of jury testimony to impeach a verdict, the Supreme Court in *Tanner v. United States*, 483 U.S. 107, 127, 107 S.Ct. 2739, 2751, 97 L.Ed.2d 90 (1987), held that it was not error for the trial court to refuse to hold an evidentiary hearing to determine whether jurors used alcohol and marijuana during the trial. The Court cautioned against the possibility of "seriously disrupt[ing] the finality of the process," *id.* at 120, 107 S.Ct. at 2747, and undermining "full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of lay people." *Id.* at 120-21, 107 S.Ct. at 2748.

The court therefore DENIES defendant's request for a post-trial evidentiary hearing because he has not met the burden to justify such a hearing.

### CONCLUSION

In summary, the court DENIES defendant's motions for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(c), or for a new trial pursuant to Fed.R.Crim.P. 33. The court also DENIES defendant's request for a post-trial evidentiary hearing with regard to his motion for a new trial.

It is so ORDERED.