**UNITED STATES of America, Appellee,**

v.

**Rodney S. MAYO, Defendant–Appellant.**

**No. 698, Docket 93–1309.**

United States Court of Appeals, Second Circuit.

Argued Dec. 3, 1993.

Decided Jan. 5, 1994.

---

John–Claude Charbonneau, Asst. U.S. Atty., Rutland, VT (Charles R. Tetzlaff, U.S. Atty., D.Vt., David V. Kirby, Asst. U.S. Atty., Rutland, VT, on the brief), for appellee.

Cloud H. Miller, III, Atlanta, GA (Marcia G. Shein, Miller & Shein, on the brief), for defendant-appellant.

Before: KEARSE, PIERCE, and JACOBS, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Rodney S. Mayo appeals from a final judgment entered in the United States District Court for the District of Vermont following a jury trial before Fred I. Parker, *Chief Judge,* convicting him on four counts of mail fraud, in violation of 18 U.S.C. § 1341 (1988), three counts of wire fraud, in violation of 18 U.S.C. § 1343 (1988), seven counts of bank fraud, in violation of 18 U.S.C. § 1344 (1988), six counts of making false statements on bank loan applications, in violation of 18 U.S.C. § 1014 (1988), six counts of unlawful tampering with vehicle identification numbers, in violation of 18 U.S.C. § 511 (1988), and two counts of interstate transportation of stolen vehicles, in violation of 18 U.S.C. § 2312 (1988). For these convictions, the federal Sentencing Guidelines ("Guidelines") prescribed a prison term in the range of 37–46 months. The district court instead sentenced Mayo principally to 50 months' imprisonment, to be followed by a three-year term of supervised release, and ordered him to pay a contingent fine of $16,000. On appeal, he contends principally that the district court erred in departing upward from the Guidelines. We reject all of his contentions and affirm the judgment of conviction.

## I. BACKGROUND

There being no challenge to the sufficiency of the evidence, the government's proof at trial may be summarized briefly. Taken in the light most favorable to the government, the trial evidence, which included Mayo's own grand jury testimony, showed the following.

In 1988, Mayo had experienced various business failures and was unable to secure credit in his own name. He embarked on fraudulent schemes using codefendant T. Mayo's Subaru, Inc., the automobile dealership of his brother, codefendant Thomas Mayo ("Thomas"), to obtain substantial loans secured by titles to vehicles that in fact were worthless and irreparable. During a two-year period, Mayo, *inter alia,* caused employees of the dealership to submit to various banks loan application documentation that fraudulently overstated the value of the vehicles used as collateral or made false statements concerning prior liens. His scheme also entailed forgery of signatures, theft of vehicles, and switching of vehicle identification numbers. Mayo also obtained more than $30,000 in loans on two boats that in fact did not exist. In all, pursuant to these schemes, Mayo collected more than $143,000 from financial institutions.

Mayo was indicted in a 46–count indictment and, though acquitted on some counts, was convicted of the offenses indicated above. Because Mayo had only one countable prior conviction, his criminal history category ("CHC") under the Guidelines was I. Given an offense level of 21, application of this CHC would have resulted in an imprisonment range of 37–46 months. The district

court noted, however, that Mayo had previously committed two uncharged crimes, to wit, arsons, and it concluded that a CHC of I was inadequate. Recognizing that a CHC of II would result in a range of 41–51 months and that a CHC of III would result in a range of 46–57 months, the court decided "per Guideline 4A1.3," to depart upward to CHC III and sentence Mayo to serve 50 months in prison.

This appeal followed.

## II. DISCUSSION

Mayo's principal argument on appeal is that the court could not permissibly increase his CHC on the basis of his prior arsons because those acts were unrelated to the crimes of which he was convicted in the present case. He also raises a number of other arguments. None of his contentions has merit.

### A. *The Increase in Criminal History Category*

■ Section 4A1.3 of the Guidelines permits a sentencing court to depart from an otherwise applicable guideline range where "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." Guidelines § 4A1.3 Policy Statement. Such information may include "prior similar adult criminal conduct not resulting in a criminal conviction." *Id.* § 4A1.3(e). Though neither this guideline nor its commentary elaborates on what is meant by "similar," it is plain that the prior conduct need not have been of an identical type, for the commentary recognizes that "the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur," Guidelines § 4A1.3 *Background.*

The prior conduct taken into account by the district court in the present case was Mayo's setting of two fires in 1985, conduct that was substantiated in the presentence report ("PSR") by statements of some five persons to whom Mayo had described his intentions or reported his actions. In the spring of that year, Mayo had been advised by at least one financial institution that it intended to conduct an audit of his business. He told an associate that he planned to set a fire that would make it appear that his financial documents had been destroyed. Accordingly, Mayo removed from his offices records that he did not want the auditors to see and put them in a truck. He drove the truck away and set it on fire. To his dismay, a passing driver stopped and put out the fire before there was enough damage to permit him to claim that the documents had been destroyed in the fire. Mayo then decided to pursue his plan by setting fire to his store. After the building burned, Mayo advised several financial institutions that he could not provide the requested records because they had been destroyed by fire. In the meantime, Mayo had had one of his associates rent storage space for the financial records, using an assumed name.

Mayo did not dispute the factual allegations in the PSR or request an evidentiary hearing; rather, he contended that these prior acts could not form the basis for a CHC departure because they were not relevant to the offenses of conviction in the present case. The district court rejected his objection, deciding that a departure was warranted:

> I am going to grant the motion for an upward departure on the basis of the two arsons, which I believe were conducted in connection with the attempt to not destroy records necessarily, but to create the impression that records were destroyed so that they could be withheld both from the banks or the Ford Motor Credit Company, or the—in connection with the audits, or from the bankruptcy court.

(Sentencing Transcript, April 7, 1993, at 138.)

We see no error in the district court's departure on this basis. Though the prior arsons do not appear to have been part of the "same course of conduct," *see* Guidelines § 1B1.3(a)(2), as the present offenses, and would not qualify as "relevant" conduct within the meaning of *id.* § 1B1.3, those are not the relevant criteria. All that § 4A1.3(e) requires is that the prior conduct be "similar." Plainly, the court viewed the prior arsons as fraudulent conduct designed to disadvantage

financial institutions in their loan dealings with Mayo, and concluded that that conduct was sufficiently similar to the frauds prosecuted in the present case to warrant an upward departure in CHC. We agree. The difference between a fraud designed to obtain loans in the first place and a fraud designed to avoid their repayment is a variation that does not bespeak dissimilarity. Accordingly, the upward departure was not inappropriate.

■ We are also unpersuaded by Mayo's complaint that the court did not explain why it chose to depart to CHC III rather than to CHC II. The prescribed imprisonment range was 41–51 months if Mayo's CHC was II, or 46–57 months if his CHC was III. Since the court indicated that it would have settled on 50 months as the appropriate sentence in this case even if CHC II were applied, any lack of explanation provides no ground for relief. *See United States v. Bermingham,* 855 F.2d 925, 934–35 (2d Cir. 1988).

B. *Other Contentions*

Mayo also contends, *inter alia,* that the district court erred in refusing to grant him a new trial, in instructing the jury on aiding and abetting, and in determining the monetary-loss component of his offense-level calculation under Guidelines § 2F1.1. These contentions lack merit and do not warrant extended discussion.

■ Fed.R.Crim.P. 33 provides that a motion for a new trial based on a ground other than newly discovered evidence must be made within seven days of the verdict. The seven-day period may be extended, but only if an extension is granted within that seven-day period. *Id.* These time limitations are jurisdictional; if the motion is not timely filed, the court lacks power to consider it. *See, e.g., United States v. Dukes,* 727 F.2d 34, 38 (2d Cir.1984). The longer period provided by the Rule for a motion based on newly discovered evidence (two years) applies only to motions that address the issues raised by the criminal charges, not to motions that raise collateral issues such as the effectiveness of trial counsel. *See, e.g., id.* at 39; *United States v. Kulczyk,* 931 F.2d 542,

548 (9th Cir.1991); *United States v. Reed,* 887 F.2d 1398, 1404 (11th Cir.1989), *cert. denied,* 493 U.S. 1080, 110 S.Ct. 1136, 107 L.Ed.2d 1041 (1990). Mayo made his new-trial motion more than seven days after the verdict; no extension had been granted. Insofar as the motion asserted that Mayo had "newly discovered evidence" of ineffective assistance by his counsel, it did not address the issues raised by the prosecution, and the motion was, to that extent, properly denied by the district court for lack of jurisdiction.

■ To the extent that Mayo sought a new trial on the ground that there was new evidence that his brother Thomas and another witness were inclined to commit perjury, the motion was properly denied on its merits. The court should not grant a motion for a new trial based on newly discovered evidence unless it is persuaded that the evidence is indeed "new" and that it would probably lead to an acquittal. *See, e.g., United States v. Spencer,* 4 F.3d 115, 118 (2d Cir.1993); *United States v. Imran,* 964 F.2d 1313, 1318 (2d Cir.) (new-trial motion should be granted only in the most extraordinary circumstances), *cert. denied,* —— U.S. ——, 113 S.Ct. 626, 121 L.Ed.2d 558 (1992). The court's denial of such a motion will not be reversed except for abuse of discretion. *See, e.g., United States v. Siddiqi,* 959 F.2d 1167, 1173 (2d Cir.1992); *United States v. Parker,* 903 F.2d 91, 103 (2d Cir.), *cert. denied,* 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990). Here, the interest of the witnesses was known to Mayo prior to trial, and the jury was properly instructed that it could take into account a witness's personal interest in assessing credibility. Further, the testimony of the witnesses was supported by other evidence. The court plainly did not abuse its discretion in determining that a new trial was not warranted.

■ Nor do we find merit in Mayo's contention that the trial court's instruction to the jury that it could find him guilty on any count · of the indictment on an aiding-and-abetting theory, *see* 18 U.S.C. § 2 (1988), violated his due process rights because only count 8 mentioned § 2. An indictment need not specifically allege a violation of § 2 for an

aiding-and-abetting theory to be submitted to the jury, so long as there is no unfair surprise to the defendant. *See, e.g., United States v. Goldberg,* 756 F.2d 949, 957 (2d Cir.), *cert. denied,* 472 U.S. 1009, 105 S.Ct. 2706, 86 L.Ed.2d 721 (1985); *United States v. Damsky,* 740 F.2d 134, 140 (2d Cir.), *cert. denied,* 469 U.S. 918, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984); *United States v. Perry,* 643 F.2d 38, 45 (2d Cir.), *cert. denied,* 454 U.S. 835, 102 S.Ct. 138, 70 L.Ed.2d 115 (1981). Pretrial notice by the government of its desire for submission to the jury of such a theory is sufficient to avoid unfair surprise, *see, e.g., United States v. Damsky,* 740 F.2d at 140, and Mayo received such notice.

■ Finally, we reject Mayo's contention that the sentencing court erred in ruling that the amount of "loss" to be considered in determining Mayo's offense level was $172,190, which included the entire amount that Mayo had obtained from financial institutions by means of his fraudulent schemes, rather than, as Mayo urged, a reduced amount because the institutions may have rights against cosigners on his loans. Mayo correctly notes that commentary to the Guidelines states that in some circumstances the loss to be attributed to a fraudulent loan application "is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan." Guidelines § 2F1.1 Application Note 7(b). In the present case, even assuming that this principle governs all of the offenses of which Mayo was convicted, we see no error in the district court's calculation. The record indicates that the physical collateral on the basis of which Mayo obtained the loans was worthless and that, as of the time of sentencing, the defrauded institutions had not recovered any part of the moneys fraudulently obtained by Mayo. The district court did not abuse its discretion in considering any expectation of recovery from cosigners to be too speculative to warrant granting Mayo credit.

## CONCLUSION

We have considered all of Mayo's arguments on this appeal and have found them to be without merit. The judgment of conviction is affirmed.