99 F.3d 400
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Rodney S. MAYO, Petitioner-Appellant
v.
UNITED STATES of America, Respondent-Appellee
 No. 95-2215.
 United States Court of Appeals, Second Circuit.
 Dec. 6, 1995.
 
 APPEARING FOR PETITIONER: RODNEY S. MAYO, pro se, Eglin AFB, FL.
 APPEARING FOR RESPONDENT: JOHN-CLAUDE CHARBONNEAU, Assistant United States Attorney for the District of Vermont, Rutland, VT.
 D.Vt.
 AFFIRMED.
 Before FRANK X. ALTIMARI, DENNIS G. JACOBS and JOSE A. CABRANES, Circuit Judges.
 
 
 1
 This cause came to be heard on the transcript of record from the United States District Court for the District of Vermont and was taken on submission.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the orders of the District Court are hereby AFFIRMED.
 
 
 3
 Rodney Mayo appeals two orders from the District Court for the District of Vermont (Parker, J.) denying his three habeas corpus petitions,[1] filed under 28 U.S.C. § 2255. Before discussing Mayo's claims, we provide the standards for our consideration of his claims.
 
 
 4
 Some of the claims Mayo discusses in his brief were not made in the three habeas petitions and are raised for the first time on appeal. Because these arguments were not raised in the district court through his habeas petitions, they are procedurally barred and we do not consider them. See Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc., 54 F.3d 69, 73 (2d Cir.1995); Strouse v. Leonardo, 928 F.2d 548, 552 (2d Cir.1992).
 
 
 5
 Some of the claims Mayo advances in his habeas petitions were considered and rejected by this court in Mayo's direct appeal of his conviction and sentence. United States v. Mayo, 14 F.3d 128, 130 (2d Cir.1994). These claims are also procedurally barred. See Barton v. United States, 791 F.2d 265, 267 (2d Cir.1986).
 
 
 6
 The claims Mayo makes for the first time in his habeas petitions must be rejected unless he shows "cause for failing to raise his claim at the appropriate time [i.e., at trial or on direct appeal] and prejudice from the alleged error." Campino v. United States, 968 F.2d 187, 189 (2d Cir.1992).[2]
 
 1. The New Trial Motions
 
 7
 More than seven days after the verdict, Mayo moved for a new trial based on three claims: (a) he had newly discovered evidence that his co-defendant and one of the Government's witnesses were inclined to commit perjury; (b) he was denied effective assistance of counsel because his counsel had a conflict of interest; and (c) he was denied effective assistance of counsel because his counsel failed to inform him of the time constraints for filing a new trial motion. The court denied the motion on claim (a) on the merits. The court denied the motion on claims (b) and (c) because the motion was untimely.
 
 
 8
 Mayo has not advanced claim (b) in any of his habeas petitions. He advanced claim (c) in his first habeas petition. Because we did not consider claim (c) on the merits on direct appeal, we consider it here under the Campino standard.
 
 
 9
 Even if claim (c) were true, Mayo cannot show that he was prejudiced. Had his trial counsel informed him of the seven-day filing deadline for new trial motions that are not based on newly discovered evidence, Mayo's new trial motion might have been timely. Had it been timely, the district court and court of appeals might have considered claims (b) and (c) on the merits, rather than dismissing them for jurisdictional reasons. We are considering claim (c) here, so there is no prejudice in the jurisdictional dismissal of the motion on that claim. Mayo presents no information about claim (b) in any of his habeas petitions, so we have no evidence before us suggesting that Mayo's trial counsel had a conflict of interest. Thus, the dismissal of the new trial motion on this ground did not prejudice Mayo.
 
 2. Sentencing Issues
 
 10
 a. Upward Departure
 
 
 11
 Mayo's offense level under the Sentencing Guidelines was 21. If his criminal history category had been level I, his sentencing range would have been 37-46 months. The district court found, however, that Mayo had twice previously committed arson and that he therefore belonged in criminal history category III. The applicable sentencing range was 46 to 57 months. Mayo was sentenced to 50 months. We held that the evidence supported Judge Parker's finding that Mayo committed the arsons, and that a departure was warranted under § 4A1.3 because the arsons were "similar" to the crimes of which he was convicted. 14 F.3d at 131-32.
 
 
 12
 In his first habeas petition, Mayo claims that he was denied effective assistance of counsel by his sentencing counsel's failure to introduce (a) exculpatory evidence on the arsons and (b) mitigating evidence to oppose the court's upward departure. The only "mitigating" evidence that Mayo points to is evidence that allegedly exonerates him. Part (b) of this ineffective assistance of counsel claim is therefore the same as part (a). Most of the allegedly exculpatory evidence was presented to Judge Parker at sentencing and was considered by him in ruling that Mayo committed the arsons. Mayo now presents the affidavits of two "witnesses" that allegedly exonerate him. Even if Mayo's sentencing counsel should have introduced testimony from these witnesses, Mayo cannot show that he was prejudiced. This additional evidence does not counteract the weight of arson evidence presented by the Government at the sentencing hearing. Thus, even with the additional evidence, the district court would have been correct to rule that based on the preponderance of the evidence, Mayo committed the arsons. Mayo's ineffective assistance of counsel claims based on the district court's upward departure were properly dismissed.
 
 
 13
 b. Incorrect Version of Sentencing Guidelines
 
 
 14
 Mayo's criminal conduct occurred between January 1988 and March 1989. The district court sentenced Mayo under the 1992 version of the Sentencing Guidelines (effective November 1, 1992). The Government concedes that Mayo should have been sentenced under the 1987 and 1988 versions (effective November 1, 1987 and 1988, respectively). Under those versions, Mayo's offense level would have been 20, rather than 21. With a criminal history category of III, the applicable sentencing range would have been 41 to 51 months.
 
 
 15
 On appeal but not in his habeas petitions, Mayo argues that the district court's use of the 1992 Guidelines violated the Due Process and Ex Post Facto Clauses. Because these arguments were neither raised by his petitions nor considered by the district court, we do not consider them.
 
 
 16
 In his first habeas petition, Mayo claims that his sentencing counsel's failure to object to the incorrect use of the 1992 Guidelines violated his right to effective assistance of counsel. Even if this lapse falls below the applicable standard, Mayo cannot show that he was prejudiced. Even under the pre-1989 versions of the Guidelines, Mayo could have been sentenced to 50 months. Moreover, Judge Parker explicitly stated at the sentencing hearing that his decision to impose a 50-month sentence was not based on where that sentence fell in the continuum of minimum and maximum sentences authorized by the 1992 Guidelines, but rather that 50 months was simply "an appropriate sentence, given all the circumstances." Judge Parker could as easily have imposed the same sentence under the pre-1989 Guidelines. Mayo therefore suffered no harm from the application of the 1992 Guidelines. His ineffective assistance of counsel claim was properly denied on this basis.
 
 
 17
 c. Amount of Victim's Loss
 
 
 18
 In determining Mayo's offense level, Judge Parker ruled that the victim's loss was $172,190. Mayo's counsel contested this ruling at the sentencing hearing, introducing evidence that the victims' loss was not actually this high. Judge Parker rejected this evidence as speculative. We affirmed Judge Parker's ruling and calculation of the amount of loss.
 
 
 19
 Mayo's first habeas petition claims that his sentencing counsel ineffectively assisted him by failing to introduce evidence on this issue. In fact, his counsel did present the evidence that Mayo now complains should have been presented. Mayo's claim is therefore baseless, and his ineffective assistance of counsel claim was correctly denied on this basis.
 
 
 20
 d. Miscellaneous Sentencing Issues
 
 
 21
 Mayo's offense level was increased under § 3B1.1 of the Guidelines for his role as a supervisor of the crimes. On appeal but not in his habeas petitions, Mayo argues that this increase in his offense level constitutes "double counting" because his offense level had already been increased under § 2F1.1(b)(2) for "more than minimal planning." Mayo also claims on appeal, but not in his habeas petitions, that the Guidelines "grouping" rules were incorrectly applied to him, arguing that all counts of his conviction must be placed in a single group under § 3D1.2(d).
 
 
 22
 Mayo raised neither of these claims in his habeas petitions, and they were not considered by the district court. We therefore do not address them.
 
 
 23
 3. Recusal of Judge Parker and U.S. Attorney Tetzlaff
 
 
 24
 a. Judge Parker
 
 
 25
 In a debtor's bankruptcy litigation, a former law partner of Judge Parker's took the debtor's deposition concerning the legality of certain loans. At Mayo's sentencing hearing, this deposition was introduced to shed light on the bankruptcy of one of Mayo's companies. At the hearing, Judge Parker stated that he had not been involved in this matter while at his former firm and had no knowledge of the underlying facts. In his second habeas petition, Mayo claims that the introduction of this deposition so tainted Judge Parker's impartiality that he should have recused himself. Mayo's petition also claims that the judge once went hunting with Mayo's brother and co-defendant, Thomas Mayo, and that the judge could not therefore act impartially toward Mayo. Even if Mayo could show cause for failing to raise these claims at the sentencing hearing or on direct appeal, he cannot show that he was prejudiced because there was no error.
 
 
 26
 A judge must disqualify himself if "his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). He must also disqualify himself
 
 
 27
 (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; [or]
 
 
 28
 (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter....
 
 
 29
 28 U.S.C. § 455(b). Neither of Mayo's claims satisfies this statutory standard.
 
 
 30
 Mayo offers merely a conclusory assertion that his brother went hunting with Judge Parker. In one of his orders rejecting Mayo's habeas petitions, Judge Parker stated that he had no recollection of ever meeting or associating with Thomas Mayo prior to the trial. There is therefore no indication that the judge had a "personal bias or prejudice" against Mayo or that his impartiality might otherwise be questioned.
 
 
 31
 Judge Parker's former law partner did not "serve[ ] ... as a lawyer concerning the matter" in controversy, since he did no work in Mayo's case. His deposition of a debtor in a separate bankruptcy proceeding does not fall within the statute. The use of this deposition at sentencing cannot cause anyone to reasonably question Judge Parker's impartiality.
 
 
 32
 Since the statute did not command Judge Parker's recusal, it was within his discretion whether to disqualify himself. In Re Drexel Burnham Lambert, Inc., 861 F.2d 1307, 1312 (2d Cir.1988). His decision not to disqualify himself may only be reversed if it "can indisputably be said" that he abused his discretion. Id. (internal quotations omitted). Since there is no evidence suggesting that Judge Parker's impartiality was compromised in any way, he did not abuse his discretion in declining to recuse himself. Mayo's petition was therefore correctly denied on this ground.
 
 
 33
 b. U.S. Attorney Tetzlaff
 
 
 34
 Prior to becoming United States Attorney for the District of Vermont, Charles R. Tetzlaff represented Thomas Mayo, Mayo's brother and co-defendant, at trial. In his second habeas petition, Mayo claims that Tetzlaff--and the entire United States Attorney's Office for the District of Vermont--should have recused themselves from this case. As evidence of Tetzlaff's involvement in this case, Mayo points out that Tetzlaff's name appeared on the cover and at the end of the Government's appellate brief.
 
 
 35
 There was no error. Tetzlaff did in fact recuse himself from this case after becoming U.S. Attorney, appointing the Chief of the office's Criminal Division as Acting U.S. Attorney for this case. As the district court pointed out in denying Mayo's petitions, Tetzlaff did not sign the Government's appellate brief, and the printing of his name on the brief was merely "consistent with the standard format." There is no evidence that Tetzlaff had any involvement in this case.
 
 
 36
 Mayo is wrong to assert that the entire U.S. Attorney's Office should have recused itself. As long as proper screening procedures are followed, a government office (unlike a private firm) need not recuse itself entirely from a case because of an individual attorney's conflict, even if that attorney is the office's leader. See In Re Grand Jury Subpoena of Ford, 756 F.2d 249, 254 (2d Cir.1985).
 
 
 37
 Mayo's final claim, made on appeal but not in his habeas petitions, is that Tetzlaff tainted the proceedings in Mayo's civil suit against his trial counsel, in which Mayo alleged that his counsel provided ineffective assistance. Tetzlaff submitted an affidavit in that case, stating that the representation by Mayo's counsel at his criminal trial was competent. Since Mayo's claim was not raised in his petition or considered by the district court, we need not consider it. We note, however, that since Mayo's claim, even if true, could not possibly show that Mayo's criminal trial or sentence was affected by Tetzlaff's affidavit, a habeas corpus petition is the incorrect vehicle for this claim.
 
 CONCLUSION
 
 38
 We have considered all of Mayo's other arguments and find them without merit. The orders of the district court are therefore affirmed.
 
 
 
 [1]
 Mayo's third petition is a duplicate of his second petition
 
 
 [2]
 Though Mayo's trial took place in June 1991, he was not sentenced until April 7, 1993, and his notice of appeal was filed on April 15, 1993. The "cause and prejudice" requirement for § 2255 habeas petitions was instituted by Campino in June 1992. It was therefore clear to both Mayo's sentencing counsel and his appellate counsel that the "cause and prejudice" requirement would apply to any subsequent habeas petitions